UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ERIC L. HOLLAND, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-03-S-2313-NE |
| CITY OF ATHENS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This action is before the court on the motion to dismiss filed by defendants Tom R. O'Hara and Joe S. Marsh (doc. no. 2) and the motion to stay discovery pending ruling on qualified immunity (doc. no. 11). Also before the court are the motion to dismiss (doc. no. 6) and the motion to stay claims (doc. no. 10) filed by the City of Athens. Upon consideration of the motions, the court finds the defendants' motions should be denied.

### I. TOM O'HARA AND JOE MARSH

Plaintiff alleges in his complaint that officers Tom O'Hara and Joe Marsh arrested him for public intoxication at an apartment complex, placed his hands in handcuffs behind his back, and escorted him to their squad car.[1] According to plaintiff, witnesses at the apartment complex can verify that he had no blood or visible injuries after having been taken into custody.[2] Plaintiff alleges the following facts that are relevant to the issues facing the court:

---

[1] *See* Complaint (doc. no. 1) at unnumbered p.2.
[2] *Id.*



>Upon arriving at the squad car, a police officer grabbed him by the hair on his head and smashed his face into the hood of the police vehicle at least several times. Plaintiff was then told by one of the officers that they were going to beat the 'hell' out of him once they got him back to the police department.
>
>Plaintiff was then placed into the police vehicle and transported to the Athens City Police Department for booking and processing. Plaintiff was then carried to a hallway in which three Defendant police officers proceeded to beat him around the face and head, with one officer having a clenched fist with his handcuffs in his fist striking Plaintiff repeatedly with the handcuffs. Plaintiff was hit repeatedly in the chest and stomach and was knocked to the floor. At this point, the officers began to kick plaintiff with their feet in his chest and side and abdomen, namely the right side causing severe injuries to his body, face, and head.
>
>Plaintiff was then placed in a cell. Plaintiff asked for medical attention and was refused. Plaintiff then asked if he could contact a family member. He continued to complain to the officers that he needed medical attention because his nose was bleeding severely and that he could not breathe. It was not until the shift change occurred that another officer came and checked on Plaintiff and allowed him to sign his own bond and allowed me [sic] to go seek medical treatment.[3]

As a result of this conduct, plaintiff alleges he sustained the following injuries: tension pneumothorax; a fractured nasal bone; and a closed head injury.[4] Plaintiff also alleges that he is in need of future surgery to his nose, because he has numerous headaches and is unable to breathe properly.[5] Plaintiff asserts violations of state tort law and federal civil rights law.

Defendants move to dismiss, arguing that plaintiff fails to state a claim, that the claims against them are redundant as their employer, the City of Athens, also is a defendant, and that

---

[3] *Id.* at unnumbered pages 2 and 3.
[4] *Id.* at unnumbered p. 3.
[5] *Id.*

they have qualified immunity under federal law and discretionary function immunity under state law.

The fact that the City of Athens also is a defendant does not make claims against officers O'Hara and Marsh redundant. They can be held individually liable for a civil rights violation under appropriate circumstances. Defendants, however, assert qualified immunity in their motion to dismiss.

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"*Slicker v. Jackson*, 215 F.3d 1225, 1232 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). "While qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss; the motion will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting *Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir.1997)); *see also, e.g., Denno v. School Board of Volusia County*, 218 F.3d 1267, 1275 (11th Cir.2000); *Kyle v. Chapman*, 208 F.3d 940, 943 (11th Cir.2000); *Maggio v. Sipple*, 211 F.3d 1346, 1355 (11th Cir.2000) (reversing district court's failure to grant 12(b)(6) motion to dismiss because defendants entitled to qualified immunity).

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in

3

> proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Ibid*. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (*per curiam*).

*Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 2155-56, 150 L. Ed. 2d 272 (2001) (emphasis in original).

In evaluating the use of force during an arrest, the court considers a variety of factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; (4) whether the force was applied in good faith or maliciously and sadistically; (5) the severity of the crime; (6) whether the suspect posed an immediate threat; and (7) whether the suspect was resisting or fleeing.[6]

In *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), the Eleventh Circuit illustrated the circumstances entitling police officers to a qualified immunity defense in the context of an arrest by comparing and contrasting three of its previous *de minimis* force cases — *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997);[7] *Gold v. City of Miami*, 121 F.3d 1442 (11th

---

[6] *See Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

[7] In *Jones*, an officer slammed the plaintiff against a wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants. The plaintiff experienced pain from having to lift his arms as he had previously suffered a stroke and pain in his arthritic knee from having his legs kicked apart. Plaintiff later received minor medical treatment for the pain in his knee. The Eleventh Circuit granted the officer qualified immunity finding that "the application of the excessive force standard would not inevitably lead an official in [the defendant officers'] position to conclude that the force was unlawful."

4

Cir. 1997);[8] and *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993), *modified* 14 F.3d 583 (11th Cir. 1994)[9]— with two cases in which the court denied qualified immunity: *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998)[10] and *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998).[11] In *Nolin*, the allegation was that the officer grabbed plaintiff from behind the shoulder and wrist, threw him against a van, searched his groin area in an uncomfortable manner, and handcuffed him. 207 F.3d at 1255. The plaintiff maintained that he suffered bruising to his forehead, chest, and wrists but the bruises disappeared quickly, and, he did not seek medical treatment. *Id*. The court concluded that this was an example of *de minimis* force and injury that would not defeat the officer's qualified immunity. *Id*. at 1258.

Whether the allegations against defendants Marsh and O'Hara are sufficient to defeat

---

121 F.3d at 1460-61.

[8] In *Gold*, an officer arrested the plaintiff for disorderly conduct, which consisted of disrespectful comments to the officer, and placed plaintiff in handcuffs. The plaintiff complained that the officer had applied the handcuffs too tightly and had refused to loosen them for twenty minutes. Plaintiff suffered only skin abrasions for which he did not seek medical treatment. The Eleventh Circuit granted qualified immunity under these circumstances. 121 F.3d at 1446-47.

[9] In *Post*, the officer who sought to arrest the plaintiff for a building code violation, pushed plaintiff against a wall and applied a choke-hold before placing the plaintiff in handcuffs. This occurred despite the fact that plaintiff did not resist arrest. The Eleventh Circuit concluded that even though pushing plaintiff against the wall might have been unnecessary, the officer was entitled to qualified immunity because it was not clearly established that this amount of force was unlawful. 7 F.3d at 1559-60.

[10] In *Thornton*, police officers lied to the plaintiff to get him to open the screen door to his apartment, after being repeatedly asked to leave plaintiff's property. Without a warrant and probable cause, the officers grabbed plaintiff on his arms and round his neck, threw plaintiff to the floor, handcuffed him, picked him up by his arms, and dragged him outside to throw him into a police car. The court concluded that the officers were not entitled to qualified immunity. 132 F.3d at 1398-1400.

[11] In *Sheth*, an officer arrested plaintiff without probable cause, pushed her against a soda machine, handcuffed her, and dragged her to the police car. The court affirmed denial of qualified immunity because of the absence of any justification for the officer's use of force. 145 F.3d at 1238.

the qualified immunity defense remains to be seen. It would not be appropriate to dismiss plaintiff's action without giving plaintiff the opportunity to address the factual underpinnings of the qualified immunity defense. *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1924, 64 L. Ed. 2d 572 (1980) (holding that there is no basis for imposing on the plaintiff an obligation to anticipate the qualified immunity defense in stating a claim under § 1983); *see also Crawford-El v. Britton*, 523 U.S. 574, 595, 118 S. Ct. 1584, 1595, 140 L. Ed. 2d 759 (1998) (noting same). The court finds that plaintiff should be required to provide a more definite statement of his claims in light of the asserted qualified immunity defense of the individual defendants. Thus, plaintiff will be provided an opportunity to file an amended complaint, specifically stating facts to address qualified immunity.[12] *See Bennett v. Parker*, 898 F.2d 1530, 1537 (11th Cir. 1990) (Tjoflat, C.J. concurring) ("Had the defendant asserted his qualified immunity defense by moving under Fed. R. Civ. P. 12(b)(6) for dismissal for failure to state a claim . . . the district court would no doubt have permitted the plaintiff to amend his complaint in order to spell out his factual contentions and only then would have reached the question of qualified immunity."). The court is specifically interested in the factual allegations against defendants O'Hara and Marsh. The complaint alleges defendants by name with respect to the arrest scene, but when discussing the alleged beating at the police station plaintiff ambiguously refers to either "three Defendant police officers" or "the

---

[12] *Compare Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc) (where the Fifth Circuit requires plaintiffs to file a Reply under Federal Rule of Civil Procedure 7 specifically addressing the qualified immunity defense).

officers."[13] If plaintiff is alleging that defendants Marsh and O'Hara were two of the three officers who participated in the alleged beating, plaintiff must specifically state those facts. If the involvement of defendants Marsh and O'Hara only extends to the events immediately surrounding the arrest, plaintiff must specifically say so. If the nature of the alleged beating at the police station was such that plaintiff cannot identify any of the three defendants who participated, plaintiff must specifically say so. The facts that are known to plaintiff regarding defendants Marsh and O'Hara must be stated *in detail*, in order for the court to evaluate the merits of their qualified immunity defense.

What is apparent from the allegations is that the three officers who are alleged to have participated in the beating at the police station would not be entitled to dismissal on the grounds of qualified immunity. Indeed, this is precisely the type of claim that can only be resolved at the summary judgment stage, because plaintiff has sufficiently stated a constitutional violation of clearly established law. Whether plaintiff can establish facts sufficient to defeat summary judgment is another matter. Accordingly, discovery must proceed so that the factual issues surrounding qualified immunity can be resolved in an expeditious manner and so that the officers can be identified.

## II. CITY OF ATHENS

Defendant City of Athens moves to dismiss all claims asserted against it. Some of the grounds for dismissal are pleading defects in plaintiff's complaint. The court will afford

---

[13] Complaint at unnumbered pages 2 and 3.

plaintiff an opportunity to amend his complaint against the City of Athens to provide a more definite statement of the basis for the City's alleged liability. It is unclear from plaintiff's complaint whether the liability of the City is alleged to occur due to a policy, custom, or practice of the City of Athens, or whether liability is based upon a theory of *respondeat superior*. Hopefully, plaintiff will clarify this uncertainty in his amended pleading.[14]

Finally, the City of Athens asks this court to bifurcate the claims alleged in the complaint against it from the claims asserted against the individual officer defendants and to stay all pretrial proceedings including discovery pending summary judgment adjudication of the claims against the individual officer defendants. The City argues that a stay is in order because "it is clear that the City's liability under 42 U.S.C. § 1983 liability in this case is wholly dependent upon an initial determination that the individual officers allegedly involved in the matters at issue actually violated the plaintiff's civil rights."[15] It is for this very reason, however, that pretrial proceedings including discovery should not be stayed. Because of the substantial allegations being made against the three officers, discovery must be had from the City in order to reveal their identities and the circumstances surrounding their actions.

### III. STATE LAW CLAIMS AGAINST ALL DEFENDANTS

Numerous state law claims are asserted against all defendants and, concomitantly, complex questions of immunity under state law are implicated. The Eleventh Circuit has

---

[14] The court notes that if plaintiff, in filing his amended complaint, does not allege that the City of Athens has a policy, custom or practice that resulted in the alleged constitutional deprivation, then the City of Athens can move to dismiss the section 1983 claim asserted against it in the amended complaint.

[15] Motion to Stay, ¶ 4 at 3 (doc. no. 10).

counseled that these issues are best left to the state courts to resolve when the court's only basis for federal jurisdiction disappears.[16] As it remains to be seen whether plaintiff's claims under section 1983 will survive, this court will reserve ruling on any issues involving the state law claims until it is established that plaintiff's claims under 42 U.S.C. § 1983 can withstand summary judgment. The court thus directs the parties to focus their discovery and arguments in dispositive motions to the § 1983 claims and defenses.

## IV. CONCLUSION

Accordingly, the motion to dismiss filed by defendants O'Hara and Marsh will be denied, and the motion to stay discovery also will be denied. The parties are ordered to proceed expeditiously to complete discovery on the issue of qualified immunity and the identity of the three officers. The deadline to complete **discovery** on the issue of qualified immunity and the identity of the three officers is **October 31, 2003.** The motion to dismiss and motion to stay filed by the City of Athens also will be denied. Plaintiff shall file a more definite statement in the form of an amended complaint on or before **Monday, September 22, 2003.** An order consistent with this memorandum opinion will be entered contemporaneously herewith.

---

[16] At this time, the case retains no independent basis for federal jurisdiction and the only claims that remain deal with complex questions of discretionary function immunity in the state of Alabama. A proper resolution of the two state law causes of action will require a careful analysis of Alabama law – something the courts of Alabama are in the best position to undertake and, for the reasons of federalism, should undertake in this sensitive area.

*Nolin v. Isbell*, 207 f.3d 1253, 1258 (11th Cir. 2000).

DONE this __15th__ day of September, 2003.

_____
United States District Judge